25 C.C.P.A. (Patents)

### WATTS v. PRAEGER.

### PRAEGER v. WATTS.

Nos. 3842, 3843.

Court of Customs and Patent Appeals.
Jan. 24, 1938.

Edward B. Beale, of Washington, D. C. (Bruce K. Brown, of Wenona, Ill., of counsel), for Watts.

Cornelius D. Ehret and Virgil E. Woodcock, both of Philadelphia, Pa. (Samuel E. Darby, Jr., of New York City, of counsel), for Praeger.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

GARRETT, Presiding Judge.

We have here an interference proceeding in which appeals have been taken by both parties from the decision of the Board of Appeals of the United States Patent Office. Seven counts, numbered 1 to 7, inclusive, are involved. Priority was awarded the party Watts by both the Examiner of Interferences and the Board as to counts 1, 4, 5, 6, and 7. The Examiner of Interferences awarded priority to Watts as to counts 2 and 3 also, but this part of his decision was reversed by the Board and priority as to them awarded to the party Praeger.

Watts is the senior party. His application was filed February 2, 1928. The application of Praeger was filed November 22, 1930. Originally, the Praeger application was filed as a joint application of Praeger and a party named Alcorn, but subsequently it was amended and Praeger was left as the sole claimant.

In the course of the proceedings in the Patent Office, both applications became involved in a series of interferences to several of which there were, at times, other parties. Counts 1 and 2 of the issue before us were involved before the Examiner of Interferences in Interference 65,623, count 3 in Interference 65,624, and counts 4, 5, 6, and 7 in Interference 65,625. When these three cases reached the Board, all parties except Watts and Praeger had been eliminated. Upon motion of the party Watts the three interferences were consolidated and all the issues presented and decided in Interference 65,623.

Of the several preliminary statements, it need only be said of each that Praeger's claimed date of conception was more than a year subsequent to the filing date of the Watts application.

Praeger was placed under order to show cause why judgment of record should not be entered against him. He thereupon moved to dissolve on the ground that Watts was not entitled to make the counts. The respective tribunals of the Patent Office held as has been indicated, the Examiner of Interferences denying the motion with an award of priority to Watts on all the counts and the Board of Appeals affirming as to counts 1, 4, 5, 6, and 7, but reversing as to counts 2 and 3 with an award of priority as to them to Praeger.

As the issue is presented here, the question of priority is solely dependent upon the ancillary question of the right of Watts to make the counts.

All the counts are claims for an apparatus, or furnace, used in the oil refining industry. The application of Praeger is entitled "For Heat Transfer Systems"; that of Watts for "improvement in Pipe Still."

As illustratrive, we quote counts 1 and 2:

"1. Oil heating apparatus comprising a chamber containing a source of heat, a second chamber in communication with and traversed by hot gases from said first chamber, tubes in said second chamber containing oil to be heated and absorbing heat substantially solely by convection, tubes in said first chamber connected to said first tubes and absorbing heat by radiation and convection, and tubes connected to said other tubes and disposed adjacent the bottom of said first chamber below the path of said hot gases for absorbing heat substantially solely by radiation.

"2. Oil heating apparatus comprising a heating chamber traversed by hot gases or products of combustion, roof tubes disposed within said heating chamber and absorbing heat by radiation and convection, and floor tubes disposed below the currents of hot gases or products of combustion for absorbing heat preponderantly by radiation, said tubes connected so that the oil therein flows

through the said roof tubes and floor tubes in the order named."

It will be seen that the counts describe a structure which includes a combustion chamber and an additional chamber into which the products of combustion are led from the combustion chamber, certain banks of tubes being located in the respective chambers, those in the second chamber to be heated substantially solely by convection and one of those (the lower bank) in the first, or combustion chamber, to be heated substantially solely, or preponderantly by radiation.

As to all the counts, we have the question of whether Watts discloses, as expressed in count 1, a bank of tubes connected with other tubes, with the first bank disposed adjacent the bottom of the combination chamber of the furnace "below the path of said hot gases for absorbing heat substantially solely by radiation," or, as expressed in many of the counts, "preponderantly by radiation."

Throughout the proceedings "substantially solely" and "preponderantly," we think properly, have been treated as having the same meaning, so far as this case is concerned. As to counts 2 and 3, an additional question is whether the disclosure of Watts supports the respective limitations requiring (in count 2) that the sets of tubes be connected "so that the oil therein flows through the said roof tubes and floor tubes in the order named," and (in count 3) "so that the oil therein flows through the said roof tubes, wall tubes, and floor tubes in the order named."

It was because of the particular limitations quoted from counts 2 and 3 that the Board held Watts not entitled to make those counts.

For disclosure the party Watts is compelled, in our opinion, to rely upon the showing made in his drawings, particularly in Figure 1, together with such description thereof as his specification affords. The Board states:

" * * * The Watts specification briefly describes the structure and relationship of the parts but has nothing to say with respect to the heating principles involved in the utilization of his structure. Praeger's disclosure, on the contrary, dwells at great length on the principles of heat transfer, of which his organization makes use. These principles are somewhat involved in

the counts on appeal. Watts' right to make the counts depends on whether or not heat transfer *inherently* takes place in his apparatus when used as contemplated in accordance with the principles recited in the claims. [Italics ours].

"Appellant apparently does not question the readability of count 1 upon the Watts disclosure, in so far as it defines structure and relationship of the various sets of tubes, except the last. · Appellant contends that the last set of tubes is not 'below the path of the hot gases' and that it does not absorb heat 'substantially solely by radiation' or as set forth in other counts, 'preponderantly by radiation.' "

Figure 1 of the Watts drawing discloses a furnace having a combustion chamber divided from another chamber by a partition wall extending from the bottom of the structure to a point near its top, or roof. At the bottom of the combustion chamber is shown a triangular depression which is described in his specification as an ash pit, and much of the controversy here grows out of the existence of this element. Above the ash pit is a bank of tubes, designated by the letter A, which, were there no ash pit, would clearly be adjacent the bottom floor.

Another bank of tubes, indicated by the letter B, is shown higher up in the combustion chamber, apparently not separated by any wall or partition from the path of the fuel flames. Two banks of tubes are shown in the second chamber, and tubes also are shown in the roof and walls of the combustion chamber. Our concern is with the set of tubes designated by the letter A.

The specification of Watts teaches that the fuel used for heating the oil undergoing the cracking or refining process may be "gas, oil, powdered coal or other suitable fuel." Obviously, the ash pit is designed for use in collecting the ashes when powdered coal or other ash producing fuel is used, and it is assumed that it would not be required when gas or oil is utilized as fuel. The drawing discloses an element in the lower side of the outside wall of the combustion chamber, designated by the numeral 18, which is stated in the specification to indicate three burners or burner tubes of any well-known construction for use of whatever fuel may be used. It is stated that the burners form no part of the claimed invention, and the specification says "It will suffice to say that those burners are adapt-

ed to inject the burning fuel into the combustion chamber 10 in the usual manner."

The only reference to the bank of tubes, A found in the Watts specification reads:

"Bank A comprises nine tubes in series, referred to as the hearth bank and located at the bottom of the combustion chamber above the ash pit 14."

There is no reference in the Watts specification to heating by radiation or convection, those terms being nowhere used. In giving examples (two) of ways of using the still, it is recited that steam is introduced through certain designated pipes, which steam mixes with the oil entering a bank of tubes designated in the drawings by the letter G, and, as we understand the specification, the purpose of introducing the steam is to "superheat" the oil. It does not appear that the steam is introduced before, or during, the passage of the oil through the bank of tubes, A.

There is argument on behalf of Watts to the effect that certain claims, numbered 14 and 18, made originally in his application as filed, support disclosure. It is pointed out that those claims contain an element reading "a bank of oil tubes in said combustion chamber at the bottom thereof" and it is insisted that in this (particularly as expressed in claim 18 which does not call for an ash pit) there is "a clear intention to claim the floor tubes or hearth tubes which are the gist of this controversy." Conceding this to be true, we are unable to find therein any suggestion as to the heating principle applied in heating the bank of tubes. The claims, taking them as a part of the disclosure, add nothing to the drawings in that respect.

It must be borne in mind that the heating principles involved are not statements of the functions of the tubes. The phrase defining the heating principle in the case of the lower bank of tubes comprises a definite limitation which requires that the tubes be located so that they will absorb the heat "substantially solely by radiation" or "preponderantly by radiation." It is a function applied to or operating upon the tubes.

The counts are for structure. The question of inherency of function must be determined from the structure as depicted in the drawings and the description of the relationship of parts in the specification. It is, therefore, important to note the precise differences in the structures shown by the respective parties. These differences lie in the existence of the ash pit in the Watts drawing, and in the showing made as to the means for the introduction of fuel into the combustion chamber. The fuel, whatever it may be, according to our understanding, is reduced to a gaseous state as it is introduced into the chamber, and the ignited gaseous element results in a flame. It is essential to meet the count that the bank of tubes, A, be disposed so that this flame passes above the tubes not heating them by convection, but leaving them, as it were, to be heated substantially solely or preponderantly by radiation from the walls of the chamber.

Convection, as applied in physics, is defined in Webster's New International Dictionary as "A process of transfer or transmission, as of heat, by means of currents in liquids or gases, resulting from changes of temperature and other causes;—distinguished from *conduction* and *radiation*." The same authority defines radiation as "Act or process of radiating, or state of being radiated; emission and diffusion of rays, as of light or heat," and gives as one definition of radiate, "To emit or send forth in rays, as heat."

There is nothing in the specification which defines the dimensions of the Watts ash pit. It is therein described as "sloping" and the drawing shows it triangular, each side sloping inwardly from top to bottom. Comparing it dimensionally, as shown in Figure 1 of his drawings, with the other parts of the combustion chamber, it is shown to be proportionately large and the bank of tubes, A is directly above it, the upper plane of the pit being wider than the plane of the bank of tubes. Judging from the drawing, the bank of tubes, A, is as much above the extreme bottom of the pit as it is below the bank of tubes designated by the letter B above alluded to, and it is certainly not adjacent the bottom of the combustion chamber in the same relation thereto as the corresponding bank of tubes in the Praeger application.

When the drawing is examined with respect to the means by which the fuel is introduced, we find a flaring aperture, triangular in shape. The specification says that burners (not shown in the drawing) pass through the aperture, such burners being "adapted to inject the burning fuel into the combustion chamber 10 in the usual manner."

It seems to us that the line of passage of the flame with respect to the bank of tubes, A, must depend greatly upon the angle at which the flame enters the chamber. Praeger specifically teaches the introduction of fuel "generally under high pressure," and further teaches that his tubes adjacent the bottom "are for the greater part or substantially entirely out of the stream of natural flow; they are not to material extent washed or contacted by the moving gases, flame or burning mixture, and are, therefore, but slightly, if at all, convectively heated."

The tribunals of the Patent Office comment upon the tendency of the products of combustion to rise rapidly on account of their intense heat.

In its decision the Board said:

"As Watts points out in his brief, the furnace is subject to the draft of the stack and due to the fact that the products of combustion are extremely hot and tend to rise rapidly, if possible, we think the examiner properly concluded that the products of combustion or hot gases would follow a path above the bank of tubes A and hence that this bank would absorb heat substantially solely by radiation. It would certainly be preponderantly by radiation for the reason that, on appellant's own argument, absorption in this manner takes place according to the fourth power of the differential involved, whereas by convection it takes place according to the first power. The absorption, therefore, would be preponderantly by radiation, even if the tubes were bathed in flame. The only limitation, therefore, about which there appears to be possible question is that relating to the relative location of the floor bank to the path of the hot gases. It seems to us that the path followed would be as above indicated and would not substantially contact the tubes."

The precise meaning of the Board's statement respecting absorption taking place "according to the fourth power of the differential involved, whereas by convection it takes place according to the first power" is not understood by us and we are not able to agree that if the tubes were bathed in flame, they would still be heated preponderantly by radiation.

Our attention has not been directed to, nor have we been able to find any case decided by any court which seems to be on all fours with the case at bar. In our decision in the case of Coast, Jr., v. Dubbs, 88 F.2d 734, 24 C.C.P.A., Patents, 1023, there were involved certain method counts and the principal question presented was whether the method was inherent in the Dubbs apparatus. We affirmed the decision of the Board of Appeals, holding that it was prima facie inherent, and that the burden rested upon Coast to show that it was not inherent. In that case, however, the drawing and its description in the specification were not alone relied upon, but the specification was found to contain certain pertinent descriptive matter showing "distillation at atmospheric pressure" which it was thought inherently resulted in "flashing."

Here we have counts involving not method but structure and there is nothing in the Watts specification which suggests anything as to the manner in which the tubes are heated.

■ So far as the record discloses, no furnace has ever been constructed in conformity with the counts. There is a statement in the brief for Watts that a structure was produced in 1928 conforming to his *claims*, but this is a matter dehors the record and no consideration can be given it by us. So, the manner and matter of function depend upon speculation and theory.

■ Upon full consideration, we find ourselves unable to agree with the conclusion reached by the tribunals of the Patent Office. That the ash pit of Watts must, by the laws of physics, have an effect upon the heating of his lower bank of tubes seems inevitable, and it is not clear just what this effect may be. Having in mind the shape of the aperture through which he introduces his fuel into the combustion chamber, it seems obvious to us that the flames from such fuel must cover all sides and both the lower and upper ends of his lower bank of tubes. Such being the case, we are unable to agree that his disclosure is sufficient to justify the finding that heating that bank of tubes substantially solely, or preponderantly, by radiation rather than by convection is inherent in his structure so as to entitle him to claim the particular invention here at issue.

In view of the conclusion reached as to the feature so far discussed, which is present in each of the seven counts at issue, it is unnecessary for us to discuss in detail counts 2 and 3 denied to Watts by the Board because of particular limitations contained

therein. We shall content ourselves with the statement that we find no error in the Board's decision relative to them.

Other questions presented in the case need not be considered.

The decision of the Board of Appeals is modified, being affirmed as to counts 2 and 3, and reversed as to counts 1, 4, 5, 6 and 7.